**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00249-CV**
_____

**JULIA KATHRYN WELCH, Appellant**

**V.**

**BOB DON WELCH JR., Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 13-08-08309-CV**

**MEMORANDUM OPINION**

This case arises from divorce proceedings between Julia Kathryn Welch and

Bob Don Welch, Jr. The trial court entered an agreed final decree of divorce on May

29, 2014, following mediation. A dispute concerning the marital residence arose

almost two years after the trial court's entry of the agreed final decree of divorce. In

light of the dispute, Bob filed a petition for enforcement of property division, which

the trial court granted, awarding the marital residence to Bob as his separate property.[1]

Julia appeals the trial court's enforcement order. Julia argues in three issues on appeal that: (1) the trial court erred when it failed to address the decree's requirement that Bob pay Julia $10,000 no later than ninety days from the date of the decree; (2) the trial court erred when it held that strict compliance with the terms and conditions of the decree by Bob was unnecessary and that Bob's intention or willingness to pay Julia after either the ninety-day deadline or the two-year deadline was sufficient compliance with the terms of the decree; and (3) the trial court should have enforced the decree as written and awarded the marital property to Julia according to the decree. We affirm.

## Background

Julia filed her original petition for divorce on August 5, 2013. Prior to the entry of the final decree of divorce, the parties reached a mediated settlement agreement regarding all issues. Thereafter, the parties agreed to and signed off on the proposed agreed final decree of divorce.

---

[1] On the record at the hearing, the trial court noted the petition was denied; however, the trial judge advised Julia that she lost and rendered an order in favor of Bob.

The agreed final decree of divorce signed by the judge on May 29, 2014, contains the following provisions under the "Division of Marital Residence" portion of the decree: "IT IS ORDERED AND DECREED that BOB DON WELCH, JR. shall pay a sum of $10,000.00 to JULIA KATHRYN WELCH for the marital residence . . . within ninety (90) days of May 13, 2014." Under a subheading entitled "**Division After Full Payment of $10,000.00 by Bob Don Welch, Jr.[,]**" the decree further provided that

> IT IS ORDERED AND DECREED that upon BOB DON WELCH, JR.'s payment of the full sum of $10,000.00 to JULIA KATHRYN WELCH and the full sum of $10,000.00 clearing the bank, BOB DON WELCH, JR. shall be awarded the marital residence . . ., including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, mailbox keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents, as his sole and separate property.

Later in the decree under another subheading entitled "**Division Upon Bob Don Welch, Jr.'s Failure to Pay the Full Sum of $10,000.00 Within Two Years of May 13, 2014[,]**" it stated

> IT IS ORDERED AND DECREED that if payment in the sum of $10,000.00 is not paid in full to JULIA KATHRYN WELCH and has not cleared the bank within two years of May 13, 2014, JULIA KATHRYN WELCH shall be awarded the marital residence . . ., included but not limited to any escrow funds, prepaid insurance, utility deposits, . . . as her sole and separate property.

> IT IS FURTHER ORDERED AND DECREED that if the property becomes the separate property of JULIA KATHRYN

3

WELCH, BOB DON WELCH, JR. shall be divested of all right, title, interest, and claim in and to the marital residence.

Prior to May 12, 2016, Bob paid Julia $1,200. It is undisputed that Bob did not pay the full amount of $10,000 to Julia within ninety days of the date of the judgment. Julia also acknowledged that Bob had two years to pay the $10,000. Julia now argues on appeal that Bob only had ninety days to pay and that the agreement was ambiguous.

Bob contacted Julia on May 12, 2016, via email and text message advising her that he had the money and wanted to make arrangements to pay her the remaining balance. Bob asked for Julia's bank account and routing number on May 12, 2016, so he could wire the money into her account. Yet, Julia refused to provide the requested banking information on May 13, 2016. She also demanded that Bob provide payment in cash on May 13, 2016. Bob agreed to provide the cash payment and tried to set up a time to meet Julia, but she refused. Bob then filed his petition for enforcement.

During the evidentiary hearing, Julia appeared *pro se*, and Bob was represented by counsel. At the hearing, Julia asserted that Bob did not have funds available on May 12 or May 13. Julia also testified at the hearing that she did not want payment; instead, she wanted the property. At the time of the hearing, Julia had control of the property, but she was not living in it and had it rented.

4

Bob argued that there was $9,000 in his bank account(s) and that he had been attempting to contact Julia beginning on May 12 to deliver payment. The trial judge made oral findings that Bob was willing to pay and the money was in the bank. As of May 5, 2016, the court noted there were text messages from Bob to Julia where he was trying to negotiate a half payment. However, as of May 12 or May 13, Bob confirmed that he was willing to pay the full $8,800 he owed. At the hearing, the court admitted an email from Bob to Julia dated May 12, 2016, which states "I have the money in hand to pay the remaining balance. I need your account number and routing number so [] I can finish paying you the remaining balance of $8800.00 for the house." Julia testified that she received the email.

The trial court ruled in favor of Bob and rendered its enforcement order on June 27, 2016, awarding the property to Bob and ordering Bob to deliver the balance of the money into the registry of the court. *See* Tex. Fam. Code Ann. § 9.006 (West Supp. 2017). The enforcement order provided in pertinent part

> IT IS ORDERED that [Bob] deliver the sum of $8,800.00 in the form of a cashier's check or money order to the Montgomery County District Court Registry within three (3) business days of the signing of this order, so that [Julia] may collect the funds.

> IT IS FURTHER ORDERED that [Julia] vacate the premise . . . by 5:00 p.m. on July 11, 2016[,] and be divested of all right, title, interest, and claim in and to the property.

5

IT IS FURTHER ORDERED that [Bob] shall be awarded the property . . . as his sole separate property at 5:00 p.m. on July 11, 2016, with all rights and privileges pertaining thereto.[2]

On July 11, 2016, Julia filed a motion for new trial and notice of appeal. In her motion for new trial, Julia alleged that she was prevented from introducing testimony or exhibits and "unwittingly waived a record."[3] She further argued that the trial court abused its discretion, and the errors amounted to denial of her rights and was reasonably calculated to cause and probably did cause the rendition of an improper judgment under Texas Rule of Appellate Procedure 44.1(a)(1). The motion for new trial was overruled by operation of law, and Julia continued with her appeal. *See* Tex. R. Civ. P. 329b.

**Standard of Review**

We review a trial court's ruling on a post-divorce decree or motion for enforcement under an abuse of discretion standard. *See Woody v. Woody*, 429 S.W.3d 792, 797 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Hollingsworth v. Hollingsworth*, 274 S.W.3d. 811, 815 (Tex. App.—Dallas 2008, no pet.). A trial

---

[2] The enforcement order contained other provisions dealing with the turning over of keys and documents to effectuate delivery of the property, along with outlining the personal property that would remain at the residence and the payment of an unsecured debt associated with the property by Julia.

[3] Despite Julia's allegation, our record includes a transcript of the June 9, 2016 hearing and exhibits.

court abuses its discretion if it acts "arbitrarily or unreasonably, without reference to guiding rules or principles." *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

## Analysis

In her first issue, Julia argues the trial court erred when it failed to address the decree's requirement that Bob pay her $10,000 no later than ninety days from the date of the decree.

Courts interpret divorce decrees as they do other court judgments. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex. 2009); *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). "Agreed judgments are interpreted in accordance with contract law." *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.—Houston [14th Dist.] 2004, no pet.). "Judgments should be construed as a whole to harmonize and give effect to the entire decree." *Shanks,* 110 S.W.3d at 447. Whether a decree is ambiguous is a question of law subject to *de novo* review. *See Bishop v. Bishop*, 74 S.W.3d 877, 880 (Tex. App.—San Antonio 2002, no pet.). When the decree is not silent regarding the property in question, general rules of construction of judgments apply. *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997) (*citing Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976)). If the decree is unambiguous as to the property's disposition when read as a whole, the court must effectuate the literal language used. *Hagen*, 282 S.W.3d at 901; *Wilde*, 949 S.W.2d

7

at 332. However, if the decree is ambiguous, the court must interpret the judgment by reviewing both the decree and the record to determine the property's disposition. *Hagen*, 282 S.W.3d at 901; *Wilde*, 949 S.W.2d at 332. Once it is determined that a contract contains an ambiguity, its interpretation and the intent of the parties becomes a fact issue. *See Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). In addition, if a judgment is ambiguous—that is, subject to more than one reasonable interpretation—courts should adopt the construction that correctly applies the law. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex. 1997) (per curiam).

We conclude the Agreed Final Decree of Divorce is ambiguous. Thus, we interpret the judgment by reviewing the decree and examining the record to determine the property's disposition. *See Wilde*, 949 S.W.2d at 332. "In some cases, the parties' subsequent actions are relevant to the construction of ambiguous judgments." *Id.* at 333. Here, while there was a provision in the agreed divorce decree providing that Bob shall pay within ninety days for the marital residence, such provision did not include a remedy if Bob failed to pay. However, the decree also contained a provision indicating Bob had two years to pay. This provision did provide for disposition of the property if Bob defaulted in making the payment. Julia acknowledged at the hearing that Bob had two years to pay the $10,000. Written

8

communications between the parties support that both parties were operating under the provision allowing Bob to pay the $10,000 within two years.

After reviewing the decree, the record, and the parties' subsequent actions, we conclude Julia's argument is without merit, and the trial court did not err when it did not address the ninety-day deadline in the enforcement order. The Agreed Final Decree of Divorce was agreed to by the parties. Unlike the provision allowing Bob two years to pay, the ninety-day recitation did not provide a remedy should Bob fail to timely pay. Finally, the course of dealings of the parties supports that both parties understood Bob was allowed two years to pay the agreed upon amount. We overrule Julia's first issue.

We will examine issues two and three together. In her second issue, Julia asserts that the trial court erred when "it held that strict compliance with the terms and conditions of the decree by Appellee was unnecessary and that Appellee's intention or willingness to pay Appellant after [the deadlines] was sufficient compliance[.]" In her last issue, Julia complains that the trial court should have enforced the decree as written and awarded the property to her. Having already determined that the ninety-day deadline was not operable, we examine the language of the provision allowing for the two-year deadline.

9

The specific language in the decree states as follows, "IT IS ORDERED AND DECREED that if payment in the sum of $10,000.00 is not paid in full to JULIA KATHRYN WELCH and has not cleared the bank within two years of May 13, 2014, JULIA KATHRYN WELCH shall be awarded the marital residence[.]"The trial court conducted an evidentiary hearing and heard testimony from both parties. The parties admitted exhibits at the hearing. "The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Woody*, 429 S.W.3d at 797. Here, after hearing testimony from both parties and reviewing the decree and evidence admitted during the hearing, the trial court orally pronounced that Bob had "the money . . . in hand to pay the remaining balance" on May 12, 2016, and Julia avoided his attempts to deliver payment within the allowable time period. The trial court then rendered an enforcement order in favor of Bob. We defer to the trial judge as the fact-finder and her determinations of credibility. *See id*. Accordingly, we conclude the trial court did not abuse its discretion when it determined Bob's attempts to provide the remaining balance to Julia on May 12, 2016, constituted sufficient compliance with the decree, and the trial court thereafter rendered an appropriate order of enforcement. *See* Tex. Fam. Code § 9.006. We overrule Julia's second and third issues.

## Conclusion

We have determined that the trial court did not err in construing the provision allowing for a two-year deadline included in the agreed decree of divorce as the operable provision for enforcement of the property division regarding the former marital residence and payment of the agreed amount to Julia. Moreover, we have concluded the trial court did not abuse its discretion when it, as the fact-finder, found that Bob had the requisite funds available to pay Julia and timely tendered payment to Julia within the two-year deadline provided in the agreed decree of divorce. We conclude the trial court rendered an appropriate order to enforce the division of property made in the decree. We affirm the trial court's order.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on January 2, 2018
Opinion Delivered April 12, 2018

Before McKeithen, C.J., Kreger, and Johnson, JJ.

11